**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JACK DANIEL'S PROPERTIES, INC.,** | |
| *Plaintiff*, | |
| **v.** | **CIVIL ACTION NO. 1:21-cv-2111** <br> **JURY TRIAL DEMANDED** |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"** | |
| *Defendants*. | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Jack Daniel's Properties, Inc. ("JDPI" or "Plaintiff"), by and through its counsel, Baker McKenzie, brings this Original Complaint against the Partnerships and Unincorporated Associations identified on the attached Schedule A (collectively, "Defendants") and alleges as follows:

**I.    PARTIES**

1.      JDPI is a Delaware corporation with its principal place of business at 4040 Civic Center Drive, Suite 528, San Rafael, California, 94903. JDPI owns all right, title, and interest in and to the Jack Daniel's trademarks and name for use in connection with a range of goods.

2.      Upon information and belief, Defendants are individuals and business entities who primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of fully interactive, commercial online marketplaces listed in Schedule A. Each defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell counterfeit products bearing the Jack

1

Daniel's trademarks to consumers within the United States, including the State of Illinois.

3.      On information and belief, many of the Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products and to provide retail and store services using counterfeit versions of the JDPI trademarks in the same transaction, occurrence, or series of transactions or occurrences.

4.      Defendants' identities are currently unknown because Defendants, in perpetrating their illegal and unauthorized actions, have intentionally hidden their identities and the full scope of their counterfeiting operations. In the event Defendants provide additional, credible information regarding their identities, JDPI will take appropriate steps to amend this Complaint in accordance with the Federal Rules of Civil Procedure.

## II.      JURISDICTION AND VENUE

5.      This is an action for trademark infringement and counterfeiting. As set forth below, Defendants' unlawful actions constitute federal trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*. This Court has original subject matter jurisdiction over the claims in this action under the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

6.      Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims that arise under the laws of the State of Illinois because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.      Venue is proper in this district under 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants since each of the Defendants directly targets business

activities toward consumers in the United States, including Illinois, through at least the online marketplaces as defined and identified in Schedule A (collectively, the "Online Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more Online Stores through which Illinois residents can purchase products using counterfeit versions of JDPI's federally registered trademarks. Upon information and belief, each of the Defendants has targeted Illinois residents by operating Online Stores that offer to sell, sell, accept payment in U.S. dollars, and ship products to the United States, including Illinois, that use counterfeit versions of JDPI's federally registered trademarks. Thus, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and is wrongfully causing JDPI substantial injury in the State of Illinois.

### III.    FACTUAL BACKGROUND

### The Counterfeiters and Counterfeit Products

8.    Like many other businesses, JDPI has been battling counterfeiters throughout the globe. In recent years, this problem has increased exponentially with infringements occurring through online marketplaces and websites. Thus, JDPI filed this action to stop the online sales of a variety of unauthorized and unlicensed counterfeit goods, including various clothing products, household décor, drinking glasses, jewelry, and smartphone accessories, all using JDPI's federally registered trademarks (the "Counterfeit Products"). The sellers of these Counterfeit Products are trading on JDPI's goodwill and reputation by offering for sale and selling goods bearing JDPI's federally registered trademarks, including JACK DANIEL'S, JACK DANIEL'S OLD NO. 7 BRAND, JACK DANIEL'S OLD NO. 7 BRAND TENNESSEE SOUR MASH WHISKEY, and other Jack Daniel's-formative marks (jointly, the "JDPI Trademarks").

9.    Upon information and belief, Defendants create the Online Stores and design them to appear to be selling genuine Jack Daniel's branded products, while actually infringing the JDPI

Trademarks and selling Counterfeit Products to unknowing consumers. The Online Stores have common features or other identifying elements, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Further establishing a logical relationship between the Defendants is the existence of webpages, such as sellerdefense.cn, that allow counterfeiters to coordinate and to communicate with each other regarding brands that have filed anti-counterfeiting actions and how to avoid counterfeiting suits. Defendants further attempt to avoid liability by going to great lengths to conceal their identities and the full scope and interworking of their counterfeiting operation. Defendants have and continue to willfully and maliciously advertise, offer for sale, and sell Counterfeit Products.

10.     JDPI was forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. JDPI has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks goodwill and reputation as a result of Defendants' actions. Accordingly, JDPI seeks injunctive and monetary relief.

### The Jack Daniel's Trademarks

11.     In the 1860s, Jasper Newton Daniel, more commonly known as Jack, introduced "the world to Old No. 7, his signature charcoal-mellowed Tennessee Whiskey." Jack Daniel's, *Our Story*, https://www.jackdaniels.com/en-us/our-story (last visited Apr. 7, 2021). In 1904, Old No. 7 took a gold medal at the World's Fair in St. Louis, Missouri. *Id.* It was the first of seven gold medals Old No. 7 was awarded. This success was not short-lived—the next 100 years would see Jack Daniel's grow into an international powerhouse for Tennessee whiskey. *Id.* Indeed, in 2016

Jack Daniel's celebrated its 150th anniversary. *Id.* As stated on the Jack Daniel's website, "[c]rafting something that endures for over 150 years takes time and character. You'll find plenty of both in the people and history that make Jack Daniel's." *Id.*

12.    The Jack Daniel's name and trademarks have been as enduring as the whiskey itself. Tennessee whiskey has been sold in the United States under the JACK DANIEL'S mark continuously since 1875, except during Prohibition. In addition to the JACK DANIEL'S trademark, Jack Daniel's Tennessee whiskey has borne the OLD NO. 7 trademark since 1875.

13.    JDPI owns and licenses the use of the trademarks used in connection with Jack Daniel's Tennessee whiskey and other products in the Jack Daniel's line. JDPI's predecessors-in-interest and licensees have expended many hundreds of millions of dollars over many decades advertising and promoting Tennessee whiskey sold under the JDPI Trademarks in the United States. Such advertising and promotion have taken place in the print and electronic media, over the Internet, on billboards, on stadium signage, and in a variety of other manners. *See infra* ¶ 20.

14.    JDPI's predecessors-in-interest and licensees have achieved billions of dollars in sales of Jack Daniel's Tennessee whiskey in the United States under the JDPI Trademarks. Jack Daniel's Tennessee whiskey is currently the best-selling whiskey in the United States and the JACK DANIEL'S brand has consistently been ranked among the world's most successful and valuable alcoholic beverage brands.

15.    The JDPI Trademarks are famous for whiskey in the United States and became famous long prior to the commencement of Defendant's acts of infringement and deceptive trade practices. And, importantly, the JDPI Trademarks are also used in connection with Jack Daniel's branded clothing products, household décor, drinking glasses, jewelry, and smartphone accessories—some of which are offered for sale on the Jack Daniel's website. *See, e.g.*, Jack

Daniel's, *Store – Men's Clothing*, https://store.jackdaniels.com/jdr/dept.asp?dept_id=10100 (last visited Apr. 7, 2021).

16.     JDPI is the owner of the following federal trademark registrations, among others:

| Trademark | Registration No. | Goods |
|---|---|---|
| JACK DANIEL'S | 2,898,085 | Telephone accessories, namely, mobile phone covers and cases, mobile phone headsets; decorative magnets; switch plate covers; audio equipment, namely, radios, am/fm radios, and radios incorporating clocks, am/fm radio cassette player/recorder, cd and dvd players, record players, headphones, microphones; audio accessories, namely, cassettes, compact disks (cd's), records; computer accessories, namely, mouse pads, computer mouse, wrist rests; eyewear, namely, protective eyewear, eyeglasses, sunglasses, and cases therefor, eyeglass chains and straps |
| JACK DANIEL'S | 2,026,933 | Cigarette lighters not of precious metal |
| JACK DANIEL'S LYNCHBURG OLD NO 7 BRAND TENNESSEE FIRE BRIGADE and Design  | 4,931,524 | Footwear; headwear including caps, hats, cowboy hats, headbands, straw hats, visors, bandanas; clothing, namely, aprons, sleeve garters, t-shirts, golf shirts, work shirts, baseball shirts, woven shirts, shirts, tops, tank tops, sweatshirts, sweatpants, jogging suits, pants, dresses, skirts, sleep pants, pajamas, robes, shorts, jeans, jackets, coats, belts, neckties, neckwear, scarves, suspenders, leather jackets, rain suits, vests, parkas, gloves |

| | | |
|---|---|---|
| JACK DANIEL'S OLD NO 7 BRAND and Design  | 4,478,404 | Ornamental lapel pins, clocks, watches |
| JACK DANIEL'S OLD NO 7 BRAND and Design  | 4,372,886 | Glass and plastic drinking containers, flasks, ceramic mugs, wood coasters, cork coasters, ceramic coasters, swizzle sticks, household food and beverage containers, glassware for beverages, metal serving trays of non-precious metal, portable beverage dispensers, portable picnic coolers, wooden cutting boards, portable drink dispensers, plastic water bottles sold empty |
| JACK DANIEL'S OLD NO 7 BRAND and Design  | 4,459,436 | Floor mats; carpets and rugs; cloth wall coverings |
| JACK DANIEL'S OLD NO 7 BRAND and Design  | 4,556,185 | Household towels, bed blankets, table covers not of paper |
| JACK DANIEL'S OLD NO 7 | 4,372,887 | Footwear; headwear including caps, hats, cowboy hats, headbands, straw hats, visors, bandannas; clothing, namely, |

| | | |
|---|---|---|
| BRAND and Design<br> | | aprons, sleeve garters, t-shirts, golf shirts, work shirts, baseball shirts, woven shirts, shirts, tops, tank tops, sweatshirts, sweatpants, jogging suits, pants, dresses, skirts, sleep pants, pajamas, robes, shorts, jeans, jackets, coats, belts, neckties, neckwear, scarves, suspenders, leather jackets, rain suits, vests, parkas, gloves |
| JACK DANIEL'S OLD NO 7 BRAND and Design<br> | 3,428,084 | Ornamental lapel pins, clocks and watches |
| JACK DANIEL'S OLD NO 7 BRAND and Design<br> | 3,428,089 | Headgear; namely, caps, hats, visors, bandannas: clothing; namely, t-shirts, golf shirts, baseball shirts, polo shirts, shirts, tops, tank tops, sweatshirts, sweatpants, jogging suits, pants, jackets, coats, belts, neckties, neckwear, scarves, leather jackets |
| JACK DANIEL'S OLD NO. 7 BRAND and Design<br> | 4,478,405 | Glass and plastic drinking containers, flasks, ceramic mugs, wood coasters, cork coasters, ceramic coasters, household food and beverage containers, glassware for beverages, metal serving trays of non-precious metal, portable beverage dispensers, portable picnic coolers, portable drink dispensers, plastic water bottles sold empty |
| JACK DANIEL'S OLD NO. 7 BRAND and Design | 4,354,331 | Floor mats; rugs |

| | | |
|---|---|---|
|  | | |
| JACK DANIEL'S OLD NO. 7 BRAND and Design  | 4,576,129 | Headwear including caps, hats, cowboy hats, headbands, straw hats, bandannas; clothing, namely, aprons, t-shirts, golf shirts, work shirts, woven shirts, shirts, tops, tank tops, sweatshirts, jackets, coats, belts, gloves |
| JACK DANIEL'S OLD NO. 7 BRAND TENNESSEE SOUR MASH WHISKEY and Design  | 4,481,424 | Ornamental lapel pins, clocks |
| JACK DANIEL'S OLD NO. 7 BRAND TENNESSEE SOUR MASH WHISKEY and Design  | 4,491,564 | Cigarette lighters not of precious metal |

| | | |
|---|---|---|
| JACK DANIEL'S OLD NO. 7 BRAND TENNESSEE WHISKEY and Design  | 3,055,287 | Cigarette lighters made of non-precious metal, ashtrays made of non-precious metal |
| JACK DANIEL'S OLD NO. 7 BRAND TENNESSEE SOUR MASH WHISKEY and Design  | 4,354,330 | Floor mats; rugs |
| JACK DANIEL'S OLD NO. 7 BRAND TENNESSEE SOUR MASH WHISKEY and Design  | 4,526,056 | Headwear including caps, hats, cowboy hats, headbands, straw hats, visors, bandannas; clothing, namely, aprons, t-shirts, golf shirts, work shirts, baseball shirts, woven shirts, shirts, tops, tank tops, sweatshirts, sweatpants, pants, jackets, coats, belts, neckwear, gloves |
| JACK DANIEL'S OLD NO.7 | 2,636,401 | Footwear, headgear, namely, caps, hats, headbands, visors, bandannas clothing, namely, aprons, sleeve garters, t-shirts, |

| | | |
|---|---|---|
| BRAND and Design  | | golf shirts, baseball shirts, polo shirts, shirts, tops, tank tops, sweatshirts, sweatpants, jogging suits, pants, jackets, coats, belts, neckties, neckwear, scarves, suspenders, braces, leather jackets |
| JACK DANIEL'S OLD NO.7 BRAND TENNESSEE WHISKEY and Design  | 2,867,158 | Glass and plastic drinking containers, namely flasks, ceramic mugs, ceramic pitchers, ceramic jugs; sponges for household purposes, wood coasters, cork coasters, swizzle sticks, bowls, decorative boxes made of non-precious metal, food containers and thermal insulated containers for food or beverages, glassware for beverages, and serving trays of non-precious metals |
| JACK DANIEL'S OLD TIME OLD NO. 7 BRAND QUALITY TENNESSEE SOUR MASH WHISKEY and Design  | 2,800,823 | Footwear; headgear, namely, caps, hats, head bands, visors and bandannas; clothing, namely, suspenders, boxer shorts, denim shirts, denim jackets, fleece tops, fleece bottoms, fleece jackets, socks, golf shirts, polo shirts, sweatshirts, t-shirts, turtleneck shirts, vests and jackets |

17.     The above-listed registrations for the JDPI Trademarks are valid, subsisting, and in full force and effect. Moreover, many are incontestable under 15 U.S.C. § 1065, and serve as *prima facie* evidence of the validity of the registrations, JDPI's ownership of the JDPI Trademarks, and of JDPI's exclusive right to use the JDPI Trademarks in commerce on or in

connection with all of the goods identified in the registrations under 15 U.S.C. § 1057(b) and § 1115(a). Further, the registrations are constructive notice of JDPI's claim of ownership of the JDPI Trademarks under 15 U.S.C. § 1072. True and correct copies of the United States Registration Certificates for the above-listed JDPI Trademarks are attached hereto as Exhibit 1.

18. The JDPI Trademarks are exclusive to JDPI and are displayed extensively on or in close connection with Jack Daniel's products, Jack Daniel's packaging, and Jack Daniel's marketing materials. Jack Daniel's products have long been popular around the world and have been extensively promoted at significant annual expense. Jack Daniel's products have been featured in leading publications and newspapers in the United States and in many other countries. Because of these and other factors, the Jack Daniel's brand and the JDPI Trademarks have become famous throughout the United States.

19. To maintain the prestige of the Jack Daniel's brand and JDPI Trademarks, and to ensure that consumers receive the type of attention commensurate with JDPI's reputation for quality products, JDPI restricts the distribution channels and territories in which licensed products are sold.

20. JDPI's parent company and affiliates operate social media accounts to promote and to advertise Jack Daniel's products, including on Facebook, Twitter, and Instagram. The Instagram account for the Jack Daniel's brand, @jackdaniels_us, has over 560,000 followers. The Jack Daniel's Facebook page has over 18 million followers, and the Jack Daniel's Twitter account has just under 200,000 followers. In conjunction with this social media marketing, the advertising, select distribution, and press coverage for the Jack Daniel's brand enhance and guarantee the public's recognition of the Jack Daniel's brand and the JDPI Trademarks. Such press coverage reaches millions of consumers.

21.     As the result of the exclusive and extensive use of the JDPI Trademarks by JDPI and/or its licensees (the "JD Companies"), the JD Companies are recognized as the source of any products bearing one or more of the JDPI Trademarks. Due to the worldwide public acceptance, overwhelming fame, and great recognition of products bearing or sold under the JDPI Trademarks, these trademarks have come to represent an enormous amount of goodwill for JDPI and have caused goods bearing the JDPI Trademarks—even unauthorized goods—to be in great demand.

22.     JDPI, however, has gone to great lengths to protect its name and enforce the JDPI Trademarks. JDPI actively seeks to protect and enforce its intellectual property rights by working with industry associations, anti-counterfeiting organizations, private investigators, and law enforcement authorities, including customs authorities in the United States and internationally. Through those efforts, JDPI has discovered many thousands of Counterfeit Products sold over the Internet.  Indeed, JDPI has seen unauthorized use of one or more of the JDPI Trademarks rise dramatically through the proliferation of online stores, such as those listed on Schedule A.

23.     Commercial internet stores, like the Defendants' Online Stores, are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Internet websites like the Defendants' Online Stores are also estimated to annually contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue.

24.     Here, Defendants facilitate sales by designing the Online Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Specifically, the Online Stores operated by Defendants use one or more of the JDPI Trademarks without authorization on or in connection with the sales of products that are not genuine Jack Daniel's products. For example, the Defendants use the trademarks JACK DANIEL'S, JACK

DANIEL'S OLD NO. 7 BRAND, or other of the JDPI Trademarks for the purpose of confusing consumers into believing that they are purchasing a genuine Jack Daniel's product. Defendants' Online Stores also appear legitimate and accept payment in U.S. dollars via major credit cards, Alipay, Western Union, and PayPal. Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, Discover®, American Express® and/or PayPal® logos. To be clear, JDPI has not licensed or authorized Defendants to use any of the JDPI Trademarks. Thus, Defendants are using trademarks owned by JDPI without authorization and creating confusion about the source of the Counterfeit Products sold through the Online Stores.

25. Many of the Defendants also deceive unknowing consumers by using the JDPI Trademarks without authorization within the content, text, or meta-tags of their websites and online marketplaces in order to attract various search engines crawling the Internet looking for sites relevant to consumer searches for Jack Daniel's products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Online Stores' listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Jack Daniel's products. Other Defendants only show the Jack Daniel's products in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Jack Daniel's products.

26. As further evidence of their illegal activity, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and to operate their network of Online Stores. On information and belief, Defendants create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to

the Complaint, as well as other unknown fictitious names. Such registration patterns are one of many common tactics used by the Defendants (and counterfeit distributors generally) to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Online Stores. For example, Counterfeit Products for sale on the Online Stores bear similar irregularities and indicia of being counterfeit, suggesting that some or all of the Counterfeit Products were manufactured by and come from a common source and that some or all of the Defendants are interrelated. Many of the Online Stores also include other notable common features, including use of the same shopping cart platforms, accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images. Moreover, these counterfeiters conspire and communicate together to avoid detection and being named in an enforcement action. For example, through websites, such as sellerdefense.cn, these counterfeiters constantly monitor U.S. lawsuits and communicate with one another about how to sell counterfeit products without detection, as well as how to transfer funds beyond a U.S. court's jurisdiction once they learn of a lawsuit. Thus, because this action presents common questions of law and fact, and because, at a minimum, JDPI's claims for relief arise from the same series of transactions or occurrences, it is entirely appropriate to join these Defendants in the same lawsuit. To do otherwise would permit the Defendants to likely avoid suit altogether, given their interrelated nature, and frustrate JDPI's attempts to enforce its intellectual property rights.

28.     In addition to operating under multiple fictitious names, Defendants use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

29.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts by brand owners, such as JDPI. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to offshore bank accounts outside the jurisdiction of this Court.

30.     Defendants, without any authorization or license from JDPI, have knowingly and willfully used and continue to use the JDPI Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet. Each Defendant's Online Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

31.     Defendants' uses of the JDPI Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, are likely to cause and have caused confusion, mistake, and deception by and among consumers and are irreparably harming JDPI.

### IV.     CAUSES OF ACTION

### COUNT ONE – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

32.     JDPI incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     JDPI is the exclusive owner of the JDPI Trademarks. JDPI's federal registrations

16

are active, valid, and in full force and effect.

34.     Defendants, without JDPI's authorization, have used and continue to use in commerce counterfeit imitations of the federally registered JDPI Trademarks in connection with the sale, offering for sale, distribution, and advertising of a variety of counterfeit goods bearing one or more of the JDPI Trademarks.

35.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, or deception among customers, potential customers, and the public as to the origin, sponsorship, or approval of the Counterfeit Products. Consumers are likely to be misled into believing that the Online Stores and sale of products bearing the JDPI Trademarks are licensed, sponsored, or otherwise approved by JDPI.

36.     Upon information and belief, Defendants were on both actual and constructive notice of JDPI's exclusive rights in the registered JDPI Trademarks when they adopted the JDPI Trademarks for use in advertising and marketing in their Online Stores, which offer for sale and sell infringing and Counterfeit Products that exactly or very closely copy those sold by the JD Companies under the JDPI Trademarks. Defendants' actions are designed to trade on the JDPI Trademarks.

37.     Defendants' unauthorized use of the JDPI Trademarks is willful, in bad faith, and with full knowledge of JDPI's prior use of, exclusive rights in, and ownership of the JDPI Trademarks, with full knowledge of the goodwill and reputation associated with the JDPI Trademarks, and with full knowledge that Defendants have no right, license, or authority to use the JDPI Trademarks or any other mark confusingly similar thereto. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. §1117(a).

38.     Defendants' acts are intended to reap the benefit of the goodwill that JDPI has

created in the JDPI Trademarks and constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

39.     As a result of Defendants' conduct and infringement of the JDPI Trademarks, JDPI is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity, including under 15 U.S.C. § 1117.

40.     Defendants' conduct has caused and is causing immediate and irreparable injury to JDPI and will continue to both damage JDPI and deceive the public unless enjoined by this Court. JDPI has no adequate remedy at law for ongoing infringement.

## COUNT TWO – TRADEMARK COUNTERFEITING (15 U.S.C. § 1114)

41.     JDPI incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42.     This is an action for trademark counterfeiting against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale a variety of counterfeit goods bearing one or more of the JDPI Trademarks.

43.     Defendants' counterfeiting activities are likely to cause and actually are causing confusion, mistake, and deception among the general consuming public as to the origin and quality of the Counterfeit Products.

44.     Defendants' illegal acts are intended to reap the benefit of the goodwill in the JDPI Trademarks and constitute counterfeiting of JDPI's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

45.     As a result of Defendants' conduct and infringement of the JDPI Trademarks, JDPI is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity, including under 15 U.S.C. § 1117.

46.     Defendants' conduct has caused and is causing immediate and irreparable injury to JDPI and will continue to both damage JDPI and deceive the public unless enjoined by this Court.

JDPI has no adequate remedy at law for ongoing infringement.

## COUNT THREE – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))

47.     JDPI incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48.     Upon information and belief, Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products have created and are creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with JDPI or the origin, sponsorship, or approval of Defendants' Counterfeit Products by JDPI.

49.     By using the JDPI Trademarks on or in close connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

50.     Defendants' false designation of origin and misrepresentation of fact as to the origin or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

51.     As a result of Defendants' conduct, including the violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125, JDPI is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity.

52.     Defendants' conduct has caused and is causing immediate and irreparable injury to JDPI and will continue to both damage JDPI and deceive the public unless enjoined by this Court. JDPI has no adequate remedy at law for ongoing infringement.

## COUNT FOUR – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, *et seq.*)

53.     JDPI incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants have knowingly and willfully engaged in deceptive trade practices violating Illinois law by passing off their Counterfeit Products as genuine Jack Daniel's products,

causing a likelihood of confusion and/or misunderstanding as to the source of their goods or services, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Jack Daniel's products, using deceptive representations or designations of origin in connection with Jack Daniel's products, and engaging in other deceptive conduct that creates a likelihood of confusion or misunderstanding among the public.

55.     Defendants' infringing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

56.     As a result of Defendants' conduct, including the violation of the Illinois Uniform Deceptive Trade Practices Act, JDPI is entitled to recover actual and/or statutory damages to the maximum amount permitted by law or in equity.

57.     Defendants' conduct has caused and is causing immediate and irreparable injury to JDPI and will continue to both damage JDPI and deceive the public unless enjoined by this Court. JDPI has no adequate remedy at law for ongoing infringement.

## V.     JURY DEMAND

58.     Under Federal Rule of Civil Procedure 38(b), JDPI demands a trial by jury of all issues so triable.

## VI.     PRAYER FOR RELIEF

WHEREFORE, JDPI prays for relief as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.      using the JDPI Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the

distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Jack Daniel's product or is not authorized by JDPI to be sold in connection with the JDPI Trademarks;

b.　　passing off, inducing, or enabling others to sell or pass off any product as a genuine Jack Daniel's product or any other service or product that is not produced under the authorization, control, or supervision of JDPI and approved by JDPI for sale under the JDPI Trademarks;

c.　　committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold or provided under the authorization, control, or supervision of JDPI, or are sponsored by, approved by, or otherwise connected with JDPI;

d.　　further infringing the JDPI Trademarks; and

e.　　manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for JDPI, nor authorized by JDPI to be sold or offered for sale, and which bear any of JDPI's trademarks, including the JDPI Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)　　Entry of an Order that, upon JDPI's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, AliExpress, DHGate, and Wish web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors, and other payment processing service

providers, such as PayPal, and Internet search engines such as Google, Bing, and Yahoo (collectively, the "Third Party Providers") shall:

    a.    disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the JDPI Trademarks; and

    b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the JDPI Trademarks.

3)    That Defendants account for and pay to JDPI all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the JDPI Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)    In the alternative, that JDPI be awarded statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the JDPI Trademarks;

5)    That JDPI be awarded its reasonable attorneys' fees and costs; and

6)    Award any and all other legal or equitable relief that this Court deems just and proper.

Dated: April 19, 2021

/s/ Shima Roy
**Shima S. Roy**
shima.roy@bakermckenzie.com
**BAKER McKENZIE**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone: 312-861-8000
Facsimile: 312-861-2899

**Dyan M. House** (*pro hac vice* pending)
dyan.house@bakermckenzie.com
**BAKER McKENZIE**
1900 North Pearl Street, Suite 1500
Dallas, Texas, 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099

ATTORNEYS FOR JACK DANIEL'S
PROPERTIES, INC.